United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSEPH BIVINS,

Plaintiff,

v.

CONTRA COSTA CITY; et al.,

Defendants.

_______________________________/

No. C 08-2570 MHP (pr)

**ORDER OF DISMISSAL WITH LEAVE TO AMEND**

**INTRODUCTION**

Joseph Bivins, an inmate at Folsom State Prison, filed this pro se civil action under 42 U.S.C. § 1983 or 28 U.S.C. § 1291. His complaint is now before the court for review pursuant to 28 U.S.C. §1915A.

**BACKGROUND**

A. Procedural History

The complaint now before the court concerns DNA evidence from the criminal case that led to Bivins' 1975 double murder conviction. This is the latest in a series of actions filed by Bivins about that conviction. After Bivins' first federal habeas petition was denied in 1998, this court dismissed four more habeas petitions challenging the conviction because he did not have permission from the Ninth Circuit to file a second/successive habeas petition, and the Ninth Circuit has actually denied permission for him to do so.[1]

In the order dismissing Bivins' most recent habeas petition, the court noted that Bivins had already been to state court with his DNA claim:

> Bivens appears to be seeking renewed consideration based on a DNA evidence issue. It appears, however, that the state court granted his application for DNA evidence but the result did not help him. The Contra Costa County Superior Court issued an order dated November 2, 2006, stating that Bivens sought DNA testing in 2002, a public defender was appointed, and DNA testing was done. The DNA test result inculpated rather than cleared Bivens. See Motion For Writ of Habeas Corpus, Exh. M, p. 1.

Bivins v. Kramer, No. C 07-5643 MHP, Order of Dismissal, p. 2.

The threshold problem in the current action is that the court is not certain what Bivins wants the current action to be, as his filing has several indicia of being an appeal from a state court decision. The first page of his pleading identifies it as a civil rights complaint under 42 U.S.C. § 1983, but his jurisdictional statement states that "[t]his court has [sic] exercise jurisdiction under 28 U.S.C. Section 1291, in conducting review of lower court's ruling on the legal questions." Complaint, p. 2. Section 1291 provides no jurisdiction for the district court: "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States. . . ." 28 U.S.C. § 1291. Adding to the uncertainty is the fact that the complaint came to this court via the Ninth Circuit, where it was stamped "Received" and then forwarded to this court – suggesting that Bivins mailed the complaint to the Ninth Circuit with the intent to file it in that court. Mailing the complaint to the Ninth Circuit and citing a statute conferring appellate jurisdiction on the Ninth Circuit signal an intent to file it in that court rather than this court. Another indicator that the pleading is intended as an appeal from the state court's decision in the proceedings in which Bivins obtained DNA testing are the allegations in the complaint about alleged errors made in the state court case. See Complaint, pp. 8-10.

B. Allegations In Complaint

The complaint presents a picture that is confused on some key points. Bivins alleges that he is being denied state-funded DNA testing allowed by California Penal Code § 1405. He alleges that DNA testing was done on at least one object in response to his § 1405 motion, but that the testing did not comply with the procedural safeguards in § 1405. He contends that the DNA sample tested was a contaminated sample. Complaint, pp. 8, see also id. at 16 ("What Joseph Bivins received was some concocted testing that had NO procedures

United States District Court
For the Northern District of California

or Safeguards to insure fair and accurate results.") Bivins also alleges that he has been told that a gun that potentially had material with DNA that could be tested is no longer available or was removed from the evidence room for use in another case. Id. at 18. There also are allegations suggesting that all the evidence has been contaminated. Id. at 19-20, 22.

The complaint alleges that there were problems in the § 1405 proceedings in state court, e.g, that testing was done on the object without the court first giving permission for the testing and without there being established what evidence could be tested or not tested. Id. at 20. The complaint alleges errors by the trial judge and Bivins' public defender in the § 1405 proceedings, and claims that Bivins was denied an evidentiary hearing at which he could obtain testimony of witnesses about the crime itself. Id. at 8-10.

Bivins then makes numerous allegations about problems at his trial in 1975, including claims about his speedy trial right, his right to notice of charges, the unreliability of a jailhouse informant, the denial of his right to cross-examine a witness, the exclusion of time-of-death evidence. Id. at 10-16. He alleges claims against various participants in the investigation and criminal proceedings for a variety of acts and omissions, many of which have nothing to do with the DNA evidence. Id. at 25-38.

The prayer for relief requests that the court: (1) "Declare that the acts and omissions described herein violated plaintiff's rights under the United States Constitutional 14th Amendment by denial of an [sic] fundamental right to a fair trial by DNA Testing, and revealing known testimony that establishes Joseph Bivins Actual and Factual Innocence." (2) "Enter judgment in favor of plaintiff for Evidentiary hearing on DNA evidence and known witness testimony, Order such additional relief as this Court may deem just and proper." Complaint, p. 39.

**DISCUSSION**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon

which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. at 1915A(b)(1),(2). Pro se pleadings must be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

The complaint presents a confusing picture and has some legally meritless claims, which the court will require plaintiff to address in an amended complaint. In general terms, the complaint tries to present a knot of problems for resolution all at once whereas the nature of the problem requires that things be taken one step at a time. The DNA evidence issue is the one that has to be decided first (and has to be decided in Bivins' favor) before Bivins maybe can proceed to the next step to use that evidence to launch a new attack on his conviction. See generally Osborne v. District Attorney's Office, 521 F.3d 1118 (9th Cir. 2008). The court now turns to the specific guidance for Bivins' amended complaint.

First, the complaint presents a confusing picture regarding the DNA evidence problem such that the court does not understand whether Bivins wants this court to order DNA tests on some object(s) or wants relief because some object(s) can no longer be subjected to DNA testing. Bivins seems to indicate that all the potential evidence is now contaminated, but if that is the case, it is not clear why there would be any point in further DNA testing. In his amended complaint, he needs to clearly explain whether all the potential DNA evidence is contaminated. If there are objects that are not contaminated and that he claims can and should be tested, he needs to identify those objects, explain where they are, and explain how he knows they are not contaminated in light of his assertions that the evidence box is contaminated. Once the court understands the nature of the DNA evidence problem, it will be able to understand whether a claim may be stated under § 1983.

Second, Bivins cannot appeal from the state court decision because this court does not have appellate jurisdiction. Federal district courts may not review the final determinations of

**United States District Court**
For the Northern District of California

a state court because they are courts of original jurisdiction. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482-86 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923). The Rooker-Feldman doctrine essentially bars federal district courts "from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." Kougasian v. TMSL, Inc., 359 F.3d 1136, 1139 (9th Cir. 2004). As mentioned in the Background section above, there are indicia (i.e., sending the pleading to the Ninth Circuit, citing 28 U.S.C. § 1291 as the basis for jurisdiction, and alleging errors by the state court) that suggest that Bivins wants to appeal the state court decision. The review available for the § 1405 decision is that set out in § 1405(j). In short, Bivins cannot appeal here from the state court's decision in the § 1405 proceedings. Contentions about what the state court did wrong in the § 1405 proceedings generally should not be included in the amended complaint.

Third, the complaint attempts to use the DNA issue as a jurisdictional hook so that Bivins can litigate other claims about his state court conviction. That won't work. The declaratory relief Bivins seeks is not available to him. The Declaratory Judgment Act, 28 U.S.C. § 2201 (1993), "permits a federal court to declare the rights of a party whether or not further relief is or could be sought, and . . . declaratory relief may be available even though an injunction is not." Green v. Mansour, 474 U.S. 64, 72 (1985). However, a prisoner may not challenge his sentence by filing an action for declaratory relief under the Declaratory Judgment Act. See United States v. Gutierrez, 116 F.3d 412, 415 (9th Cir. 1997). "'[T]he Declaratory Judgment Act may not be used as a substitute for habeas corpus, coram nobis or other such procedures.'" Id. at 416 (citations omitted) (affirming district court's denial of motion for declaratory relief because "the Declaratory Judgment Act is not a substitute for a § 2255 motion to correct a sentence.") Bivins must craft a different prayer for relief in his amended complaint.

While there might be a DNA evidence related claim, none of the other claims in the complaint can go forward in this action because they are essentially calling into question the validity of the 1975 conviction. As mentioned in the preceding paragraph, a declaratory

relief action cannot be brought to challenge Bivins' conviction or sentence. And although the complaint does not seek damages, Bivens is informed that seeking them in the amended complaint would be futile under the Heck rule. The case of Heck v. Humphrey, 512 U.S. 477 (1994), held that a plaintiff cannot bring a civil rights action for damages for a wrongful conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, unless that conviction or sentence already has been determined to be wrongful. See id. at 486-87. A conviction or sentence may be determined to be wrongful by, for example, being reversed on appeal or being set aside when a state or federal court issues a writ of habeas corpus. See id. The Heck rule also prevents a person from bringing an action that -- even if it does not directly challenge the conviction -- would imply that the conviction was invalid. The practical importance of this rule is that plaintiffs cannot attack their convictions in a civil rights action for damages; the conviction must have been successfully attacked before the civil rights action for damages is filed.

Fourth, Bivins claims a due process right based on a protected liberty interest created by the mandatory language in California Penal Code § 1405. In his amended complaint, if he wishes to assert this claim, he must identify the particular mandatory language he is relying on as the basis for such a claim.

## CONCLUSION

The complaint is DISMISSED with leave to amend. The amended complaint must be filed no later than **October 31, 2008**, and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page. Plaintiff is cautioned that his amended complaint must be a complete statement of his claims and will supersede existing pleadings. See London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981) ("a plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint.") Failure to file the amended complaint by the deadline will result in dismissal of this action.

Two cases were opened for plaintiff because his in forma pauperis application was mailed in one envelope and his complaint was mailed in another envelope, and the envelopes

United States District Court
For the Northern District of California

reached the courthouse on different days and were not matched with each other. By separate order the court will dismiss the higher-numbered case (Case No C 08-2629 MHP). Petitioner must make all further filings in this case, i.e., Case No. C 08-2570 MHP, writing this case number on the first page of every document he files. The clerk will put a copy of the in forma pauperis application from Case No. C 08-2629 MHP in the case file for Case No. C 08-2570 MHP.

IT IS SO ORDERED.

Dated: September 26, 2008

______________________
Marilyn Hall Patel
United States District Judge

United States District Court
For the Northern District of California

**NOTES**

1. In a recent habeas action, the court recounted the habeas history of Bivins (who also goes by the name of Joseph Bivens):

> Joseph Bivens' habeas corpus petition challenging his conviction was denied on the merits in 1998 in Bivens v. Lungren, Case No. C 96-3655 MHP, and affirmed on appeal in 1999 in Ninth Circuit Case No. 98-15913. Three times thereafter Bivens tried to file another habeas petition to challenge the same 1975 conviction and three times the court dismissed the actions with instructions that Bivens had to obtain permission from the Ninth Circuit Court of Appeals to file a second or successive petition. See Bivens v. Newland, Case No. 00-3477 MHP.; Bivins v. Runnel, Case No. 04-4411 TEH, and Bivins v. Runnel, Case No. C 04-4751 MHP. Bivens finally sought permission from the Ninth Circuit, but that court denied his application for authorization to file a second or successive petition. See Bivins v. Kramer, 9th Cir. No. 07-71124, Order filed May 17, 2007.

Bivins v. Kramer, No. C 07-5643 MHP, Order of Dismissal, p. 1. That order dismissed Bivins' fifth habeas petition challenging the 1975 conviction because he had not obtained permission from the Ninth Circuit to file another habeas petition. See 28 U.S.C. § 2244(b)(3)(A).