UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH BIVINS,<br><br>    Plaintiff,<br><br>  v.<br><br>CONTRA COSTA CITY; et al.,<br><br>    Defendants.<br>                                           / | No. C 08-2570 MHP (pr)<br><br>**ORDER OF DISMISSAL** |

**INTRODUCTION**

Joseph Bivins, an inmate at Folsom State Prison, filed this pro se civil action under 42 U.S.C. § 1983 or 28 U.S.C. § 1291. The court reviewed his complaint and dismissed it with leave to amend. His first amended complaint is now before the court for review pursuant to 28 U.S.C. §1915A.

**BACKGROUND**

Bivins is in custody serving sentences of life plus five years and life plus seven years upon being convicted in 1974 of murdering Robert Jones and Precious Bowie. Jones and Bowie had been stabbed repeatedly. Lab test results indicated that there was semen in both victims' rectums and in Bowie's vaginal area. Bivins denied at trial that he was at the house on the night of the killing. See Order Denying Petition For Writ of Habeas Corpus in Bivens v. Lungren, No. C 96-3655 MHP.

This is the latest in a series of actions filed by Bivins about that conviction. After Bivins' first federal habeas petition was denied in 1998, this court dismissed four more habeas petitions challenging the conviction because he did not have permission from the Ninth Circuit to file a second/successive habeas petition. When he did apply for permission to file a second/successive petition, the Ninth Circuit denied permission for him to do so.

Bivins asserts that DNA testing of the evidence from the scene of the murders will prove him innocent. Bivins went to state court with his DNA claim, and was halfway successful. DNA testing was ordered by the state superior court, but the DNA test results inculpated rather than cleared him. The DNA of blood on one of Bivins' shoes was consistent with that of victim Jones and the DNA on swabs from victim Bowie's vaginal and rectal areas was consistent with a mixture of sperm from Jones and from Bivins. See First Amended Complaint, attachment (2002 report of laboratory examination).

In light of the inculpatory results on the DNA tests, he now asserts that there were problems with the testing methods, that the samples were cross-contaminated with other evidence, and that there are other objects from the crime scene that should be subjected to DNA testing.

In reviewing the original complaint in this action, the court noted that it was unclear whether Bivins was trying to appeal from the state court decision or pursue a civil rights claim under 42 U.S.C. § 1983. The court directed Bivins to file an amended complaint that explained more clearly his DNA-testing claim, that did not attempt to appeal the state court decision, and that did not attempt to litigate other claims about his criminal trial and conviction.

Bivins' first amended complaint focuses on the DNA testing issue, although he also alleges that there were various errors at his criminal trial. With regard to the DNA testing issue, he alleges that the failure to test all the DNA evidence violated his fundamental due process right to DNA testing, that the DNA testing that was done was not properly done, that some evidence was contaminated, and that other pieces of evidence should have been tested.

**DISCUSSION**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. at 1915A(b)(1),(2). Pro se pleadings must be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

The DNA testing claims must be dismissed based on the recent decision from the U.S. Supreme Court in District Attorney's Office For The Third Jud. Dist. v. Osborne, No. 08-6, slip op. 1, 13-18 (U.S. June 18, 2009), in which the Court held that there was no federal constitutional right to obtain post-conviction access to the State's evidence for DNA testing. The Fourteenth Amendment's Due Process Clause limits a State's power to take away life, liberty or property, without procedural protections. Id. at 13. The person claiming a due process violation with regard to postconviction DNA testing must show he has a protected liberty interest "to prove his innocence even after a fair trial has proved otherwise." See id. at 14. The Court found that Osborne, a prisoner under judgment of the State of Alaska, had a liberty interest in demonstrating his innocence with new evidence under Alaska state law (thus satisfying the requirement that there be a protected liberty interest) but did not show that the Alaska state procedural protections attendant to that liberty interest were constitutionally inadequate. See id. at 15-16. The Court also rejected the argument that Osborne had a freestanding substantive due process right to DNA evidence. Id. at 19.

The Court explained its analysis of Osborne's procedural due process claim in depth. As a result of his conviction, Osborne had a lesser liberty interest than a criminal defendant

3

1   who had not yet been convicted, and the State correspondingly had more flexibility in
2   deciding what procedural protections to afford in the context of postconviction relief than in
3   the context of a criminal trial. See id. at 15. The question thus was "whether consideration
4   of Osborne's claim within the framework of the State's procedures for postconviction relief
5   'offends some principle of justice so rooted in the traditions and conscience of our people as
6   to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental
7   fairness in operation.'" Id. at 15-16 (quoting Medina v. California, 505 U.S. 437, 446, 448
8   (1992)). The Court concluded that there was "nothing inadequate about the procedures
9   Alaska has provided to vindicate its state right to postconviction relief in general, and
10  nothing inadequate about how those procedures apply to those who seek access to DNA
11  evidence." Osborne, slip op. at 16. Alaska law had provided a substantive right to be
12  released on a compelling showing of new evidence establishing innocence, exempted those
13  claims from statutory time limits, allowed for discovery including access to DNA evidence
14  upon certain conditions, and used procedures similar to other jurisdictions' procedures for
15  requesting DNA testing. Id. Alaska also may have provided an additional right of access to
16  DNA evidence using a three-part test for those who could not obtain relief under the general
17  postconviction procedures. Id. at 17. Because it was the burden of the person seeking DNA
18  evidence "to demonstrate the inadequacy of the state-law procedures available to him in state
19  postconviction relief," and Osborne had not done so, he had not shown a procedural due
20  process violation. Id. at 18.
21         Applying Osborne to Bivins' DNA evidence claims proves fatal to his case. For
22  Bivins to be able to state a claim for a due process violation relating to the DNA evidence, he
23  must show (1) the existence of a protected liberty interest and (2) that California's procedures
24  for protecting that interest violate a fundamental principle of justice or are fundamentally
25  unfair. This court will assume without deciding that there is a liberty interest, i.e., that
26  California state law provides a right comparable to that in Alaska to be released upon a
27  compelling showing of actual innocence based on newly discovered DNA evidence. See
28  generally Cal. Penal Code § 1485 (providing for discharge from custody upon petition for

4

1  writ of habeas corpus when there is no legal cause for petitioner's imprisonment or restraint);
2  In re Weber, 11 Cal.3d 703, 724 (Cal. 1974) (newly discovered evidence does not warrant
3  relief "unless (1) the new evidence is conclusive, and (2) it points unerringly to innocence").
4  But making that assumption only leads one to the second half of the due process analysis.

5  The second thing Bivins must show is that the consideration of his claim within the
6  framework of California's DNA access procedures in California Penal Code §1405 "'offends
7  some principle of justice so rooted in the traditions and conscience of our people as to be
8  ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in
9  operation.'" Osborne, slip op. at 15-16 (citation omitted). Bivins has not done so, nor could
10 he. California Penal Code §1405 provides an elaborate scheme under which a person in
11 prison may seek and obtain DNA testing of evidence. The statute provides for a written
12 motion to be made by a person seeking performance of DNA testing (§1405(a)); sets forth
13 the particular showing that the movant must make (§1405(c)(1)); provides for the
14 appointment of counsel to assistant an indigent movant (§1405(b)); provides for notice to the
15 prosecutorial authority and an opportunity to be heard (§1405(c)(2)); allows disclosure of
16 results from tests already performed (§1405(d)); allows for a hearing on the motion
17 (§1405(e)); provides criteria under which the court "shall grant the motion for DNA testing"
18 (§1405(f)); provides that, if testing is allowed, the court "shall identify the specific evidence
19 to be tested and the DNA technology to be used" (§1405(g)(1)); describes a procedure for
20 selecting the laboratory at which testing will be done (§1405(g)(2)); describes how costs will
21 be allocated and allows for costs not to be allocated to an indigent inmate (§1405(h));
22 provides for judicial review by petition for writ of mandate or prohibition (§1405(j));
23 provides for testing "as soon as practicable" unless the court orders it expedited (§1405(k);
24 and provides that the right to file such a motion is absolute and not waivable (§1405(m)).
25 Bivins has not alleged anything to indicate that the consideration of his DNA testing claim
26 within the framework of §1405 offended some fundamental principle or justice or was
27 fundamentally unfair. Not only does the elaborate scheme exist, it worked for Bivins: his
28 motion was granted and DNA tests were done. That things did not turn out as he hoped does

5

1 not mean that the procedural scheme in § 1405 was constitutionally inadequate. His
2 allegations that disagree with the results of the tests, complain about the quality of the tests,
3 and urge for testing of additional items do not state a due process claim. The § 1983 claim is
4 dismissed without leave to amend.

5     Bivins' first amended complaint also contains allegations about trial errors in the
6 criminal trial that led to his murder convictions in 1974. These claims are dismissed for the
7 reasons stated at pages 5-6 of the Order of Dismissal With Leave To Amend. A prisoner
8 may not circumvent the limitations on federal habeas by filing an action for declaratory relief
9 or injunctive relief, as Bivins has attempted to do. Habeas is the exclusive remedy for
10 challenging a state court conviction. See Calderon v. Ashmus, 523 U.S. 740, 747 (1998);
11 Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). A claim that would necessarily imply the
12 invalidity of a prisoner's conviction or continuing confinement must be brought in a habeas
13 petition. See id. That Bivins has been denied permission by the Ninth Circuit to file a
14 second or successive permission does not mean he may pursue habeas-type claims in
15 alternative garb; rather, it means that he has reached the end of the line for judicial review of
16 his conviction, unless something later develops that would provide cause for him to file
17 another motion in the Ninth Circuit for permission to file a second or successive petition.

18     Bivins' first amended complaint also contains allegations about errors in the state
19 court DNA proceedings. These claims are dismissed for the reasons stated at pages 4-5 of
20 the Order of Dismissal With Leave To Amend. Specifically, this court does not have
21 appellate jurisdiction over state courts. Bivins' arguments must be pursued, if at all, in the
22 California appellate courts.
23 / / /
24 / / /

**CONCLUSION**

For the foregoing reasons, the first amended complaint is DISMISSED for failure to state a claim upon which relief may be granted. Further leave to amend will not be granted because it would be futile. The clerk shall close the file.

IT IS SO ORDERED.

Dated: June 30, 2009

_____
Marilyn Hall Patel
United States District Judge